IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MI & MY CO LLC,

      Plaintiff,

    v.

TASHEIM STRATTON
(d/b/a NURSE YONI and YONI ESSENCE
LLC)
(a/k/a NURSEYONI.COM)

      Defendant.

CIVIL ACTION FILE

NO. _____

**Jury Trial Demanded**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND ASSET FREEZE ORDER**

This matter is before the Court on Plaintiff Mi & My Co LLC's ("Plaintiff" or "Mi & My") *Ex Parte* Motion for Temporary Restraining Order ("Motion for TRO").  As discussed below, Plaintiff has satisfied the requirements for the issuance of an *ex parte* temporary restraining order and the additional relief requested.

**APPLICABLE LEGAL STANDARDS**

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors:  (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the

1

order is not granted; (3) that the threatened injury to Plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, No. 1:18-CV-141, 2018 U.S. Dist. LEXIS 13385, at *10-11 (N.D. Ga. Jan. 26, 2018) (applying the four-part test and granting a preliminary injunction in a Lanham Act case). Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit or a verified complaint demonstrate the moving party will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an *ex parte* seizure order if providing notice to the defendant would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed Plaintiff's Motion for TRO, Memorandum, supporting declarations and evidence, and the Verified Complaint makes the following findings of fact and conclusions of law:

2

### A.    Plaintiff's Intellectual Property

1.    Plaintiff is the owner of inherently distinctive trade dress, which it uses for its products, on its website, and in its marketing and advertisements ("Plaintiff's Trade Dress").

2.    Plaintiff is the owner of registered and common law trademarks, including, without limitation U.S. registrations for SWEET LIKE HONEY®, BOMB KITTY YONI OIL®, and KITTY DRIP®, as well as common law rights to marks such as "The Big O Tightening Pops," "The Big O," "Gorilla Grip," "P*ssy Whipped," "D Appointment," "Candy Cheeks" and "Baby Maker," and to slogans such as "He's Whipped," "Can I Come Over?!," "WAP Box," and "Put Him To Sleep" (collectively, the "Plaintiff's Trademarks") for goods and services related to feminine hygiene and intimate care.

### B.    Defendant's Infringement and Unfair Competition

3.    Defendant is an individual who sells, offers for sale, distributes, and/or advertises goods through the aliases "Nurse Yoni" and "Yoni Essence LLC" and operates the website nurseyoni.com, as well as under various aliases ("Aliases") on various e-commerce marketplaces, including but not limited to, TikTok Inc. ("TikTok"), Meta Platforms, Inc. ("Facebook"), Shopify Inc. ("Shopify), and others (each a "Marketplace" and, collectively, the "Marketplaces").

3

4. Defendant buys, distributes, advertises, offers for sale, and sells a line of products which are copies of Plaintiff's products and product configurations using identical or nearly identical copies of Mi & My's common law trade dress packaging on a website that also copies Mi & My's trade dress and product descriptions without Mi & My's authorization (the "Infringing Products").

5. Defendant uses in commerce a reproduction, counterfeit, copy or colorable imitation of Plaintiff's Trade Dress on or in connection with the sale, offer for sale, distribution or advertising of the Infringing Goods on its various virtual storefronts using various Aliases on the Marketplaces.

6. Defendant uses in commerce a reproduction, counterfeit, copy or colorable imitation of one or more of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution or advertising of the Infringing Goods on its various virtual storefronts using various Aliases on the Marketplaces.

7. Defendant's Infringing Products mimic the functions and suggested uses of Plaintiff's products and substantially copy Plaintiff's descriptions of its products.

8. Defendant has engaged in unfair competition through its operation of a competing business using confusingly similar trademarks, trade dress and branding to Plaintiff's Marks and Plaintiff's Trade Dress, the use of Plaintiff's suppliers and contractors to produce near-identical products with near-identical

4

advertising and renderings, while also using nearly identical product listings, wording, presentation, and advertising positioning in the same marketing channels.

9.    Plaintiff has shown that Defendant's conduct has been willful and deliberate.

10.    Defendant has offered Infringing Products for sale throughout the United States.

11.    Defendant also accepts payment for its goods in U.S. dollars through, for example, a variety of payment processors, banks, escrow services, money transmitters, the Marketplaces themselves, and other companies that engage in the processing or transfer of money of or on behalf of Defendant by virtue of his operation of the Aliases on any of the Marketplaces (collectively referred to hereafter as "Financial Institutions").

12.    The Court has personal jurisdiction over Defendant pursuant to O.C.G.A. § 9-10-91 because Defendant transacts business in this state and this judicial district and/or has committed tortious acts within this judicial district including unfair competition, trademark infringement, among other wrongful and unlawful acts.  Defendant has also committed tortious injuries in this state and judicial district caused by acts or omissions outside this state, and Defendant regularly does or solicits business and/or engages in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered

in this state.  Furthermore, Defendant has purposefully and voluntarily placed the infringing products into the stream of commerce with the knowledge, understanding, and expectation that such infringing products would and will be purchased in the Northern District of Georgia.

13.    Plaintiff has never authorized Defendant to use any of Plaintiff's Marks or Plaintiff's Trade Dress in the advertising, promotion, or sale of any goods in the United States.

14.    The Court further finds, based on the record, that:

     a.    Plaintiff has established that it is likely to succeed on the merits of its claims;

     b.    There is a strong likelihood of irreparable harm to Plaintiff in the absence of temporary restraining order;

     c.    The balance of equities weighs in Plaintiff's favor; and

     d.    The public interest is served by granting the requested relief.

15.    Plaintiff is entitled to a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure.  The temporary restraining order is justified because Plaintiff has shown that it will suffer immediate and irreparable harm in the absence of the requested relief.  Specifically, there is just cause to enjoin Defendant from continuing to engage in unfair competition and infringe on Plaintiff's intellectual property rights.

16.     Plaintiff has further demonstrated that this TRO should be granted *ex parte*.  If Plaintiff provides Defendant notice of its application for TRO, Defendant—who does not appear to abide by corporate formalities—is likely to delete its Aliases on the Marketplaces, transfer any ill-gotten gains away from the Marketplaces, cover up evidence of its infringing activities, and shield its ill-gotten assets in a concerted effort to avoid liability and prevent Plaintiff from achieving a meaningful recovery, including financial compensation and permanent injunctive relief.

17.     Granting Plaintiff an *ex parte* TRO is also in the public's interest.  It will prevent consumer confusion in the marketplace and remove from the stream of commerce Infringing Products, thereby preventing consumer harm, confusion, mistake, and deception.

18.     Plaintiff has requested a permanent injunction and recovery of Defendant's ill-gotten profits from his sale of Infringing Goods pursuant to 15 U.S.C. § 1117(a).

19.     By requesting equitable relief, Plaintiff has invoked this Court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief.  *Levi Strauss*, *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.,* 51 F.3d 982, 987 (11th Cir. 1995).

20.     Defendant is likely to destroy evidence of its infringing and unlawful activities, such as evidence regarding the Aliases and payment processing histories on the Marketplaces and other Financial Institutions, as well as hide and/or transfer any ill-gotten proceeds from the sale of Infringing Products, unless those assets are frozen or otherwise restrained.

In light of the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Temporary Restraining Order is **GRANTED.**

**IT IS FURTHER ORDERED:**

1.     Defendant and his employees, agents, licensees, attorneys, subsidiaries, and affiliated individuals, entities, companies, successors, and assigns, and any and all persons and/or entities in active concert or participation with any of them, directly or indirectly, having notice of this Order are hereby enjoined, until further order of this Court, from:

    a.  operating, maintaining, advertising, or deriving any commercial benefit from <nurseyoni.com>;

    b.  operating, maintaining, advertising, or deriving any commercial benefit from Defendant's Aliases on any Marketplace, or any other account on which Defendant has sold, offered for sale, advertised, promoted, or displayed any Infringing Product or any other products bearing trade dress that are likely to cause confusion, mistake,

8

deception, or public misunderstanding as to the origin of such other products or their connection to Plaintiff and its products;

c. using in any manner Plaintiff's Trade Dresses or any colorable imitation thereof;

d. using in any manner Plaintiff's Marks or any colorable imitation thereof;

e. importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any Infringing Products or any other products bearing trademarks and/or trade dress that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of such other products or their connection to Plaintiff and its products;

f. instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

2. For the duration of this suit, Defendant must preserve all documents and electronically stored information arising from or related to its sale, offer for sale, distribution, and advertising of Infringing Products through its virtual storefronts located on the Marketplaces.

3.      Any Marketplace that receives actual notice of this Order shall immediately comply with the following:  suspend or remove any Alias owned, controlled or utilized by, or associated with Defendant; attach and freeze all funds in any accounts owned, controlled or utilized by, or associated with Defendant, or otherwise prohibit the transfer of any funds out of any such accounts, and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the Marketplace or the respective Financial Institution for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained, and/or located exclusively within the United States.

4.      Within seven (7) days of receiving actual notice of this Order, all Financial Institutions shall provide a report to Plaintiff for any account owned, controlled or utilized by, or associated with Defendant with such Financial Institution, the report to include, at a minimum, the following information:

a.      Legal name and e-mail address of the account holder;

b.      Current account balances and amount of funds attached, frozen, and being held in trust pursuant to this Order;

c.      Identity of all financial accounts linked to or associated with Defendant and/or the Aliases on the Marketplaces, or from or to which funds have been transferred from the attached accounts, including the name of the Financial Institution, account numbers,

routing numbers, and other relevant data to allow Plaintiff to seek further application of this Order.

5.     No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or Marketplace for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

6.     Upon receipt of notice of this Order, each Marketplace on which Defendant maintains an Alias or account is ordered to immediately:

   a. Provide to Plaintiff the name and e-mail address of each Alias associated with Defendant or any organization, business entity, and/or persons under Defendant's custody or control having an account or store on the Marketplace;

   b. Freeze all funds held or received by the Marketplace for Defendant's benefit; and

   c. Disable the Alias and the infringing listings for each of the Defendant's Aliases on the Marketplaces and any accounts associated with Defendant and cease providing any services to Defendant.

7.     Plaintiff is authorized to issue expedited written discovery, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, related to:

a. the identities of Defendant's employees, agents, licensees, attorneys, subsidiaries, and affiliated individuals, entities, companies, successors, and assigns, and any and all persons and/or entities in active concert or participation with any of them, directly or indirectly, including all known contact information, including any and all associated e-mail addresses; and

b. the nature of Defendant's operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Aliases and Defendant's financial accounts, as well as providing a full accounting of Defendant's sales and listing history related to the Aliases.

8.    Plaintiff is authorized to issue any such expedited discovery requests by electronic means, including by electronic e-mail.  Defendant shall respond to any such discovery requests within three (3) business days of being served by electronic e-mail.

9.    Defendant shall submit quarterly reporting to the Court for each account identified in response to Plaintiff's expedited discovery requests. Defendant shall submit the latest statements for each such account within one (1) business day of serving its responses.  Thereafter, Defendant shall submit statements of the same accounts on a quarterly basis, beginning with the quarter

ending June 30, 2026.  Any new, separate, or substitute accounts shall be disclosed, and shall be subject to the same obligation.  This reporting obligation shall continue for the life of this litigation, or until further order of the Court. Defendant is forewarned that any movement of funds outside of the ordinary course of business, or with the evident intention of secreting assets, will be dealt with severely.

10.     Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

11.     This Order shall apply to Defendant, its associated virtual storefronts on the Marketplaces and any other websites, domain names, seller identification names, e-commerce stores or Financial Institution accounts which are being used by Defendant for the purpose of advertising, offering for sale and selling any of the Infringing Products at issue in this action and/or unfairly competing with Plaintiff.

12.     This Order shall remain in effect for fourteen (14) days unless the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue cannot be heard within such time, in which case the Order shall remain in effect until the date of the hearing or until such further date as set by the Court or stipulated to by the parties.  Under Federal Rule of Civil Procedure 65(b)(2), this Order may be extended for one additional period of up to fourteen (14) days for good cause shown or by consent of the adverse party.

13.     Defendant or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

14.     A hearing by video conference is set before this Court, technical details to follow, on _____, at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, shall provide a reasonable estimate of their potential lost sales with supporting documentation and requested bond amount and shall appear and show cause why a preliminary injunction should not issue, at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

15.     Any response or opposition to Plaintiff's request for a preliminary injunction must be served on Plaintiff's counsel by _____ and filed with the Court, along with Proof of Service.  Plaintiff shall file any reply memorandum prior to the hearing set for _____.  The above dates may be revised upon stipulation by all parties and approval of this Court.  **Defendant is on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(a), Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority.**

14

15

16.     Plaintiff is ordered to remit a bond in the amount of $10,000 within seven days of this Order.

17.     This Temporary Restraining Order expires within fourteen (14) days unless extended for good cause.


**SO ORDERED**, this _____ day of May, 2026.


_____
**UNITED STATES DISTRICT JUDGE**